IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DIGENE CORPORATION,

                            Plaintiff,                        ORDER

v.

                                                    07-C-22-C

THIRD WAVE TECHNOLOGIES, INC.,

                            Defendant.

---

      Before the court in this patent/antitrust lawsuit is Digene's motion for relief from Third Wave's discovery failures, accompanied by supporting documents and a reply brief. *See* dkts. 75, 76, (sealed) and 86-87. Third Wave concedes that it messed up its disclosure of a set of its scientists' lab notebooks, asserts that it has remedied this, and opposes the grant of additional relief to Digene. *See* dkts. 78-81 and 82(sealed). An unbidden surreply and response elbowed their way into the case file, *see* dkts. 91-93, and I have considered them.

      Before addressing the instant imbroglio, I note that as a result of this court's July 27, 2007 order we are not writing on a clean slate. At that time I did not sanction either side and warned that "if there is any provable intransigence, lack of accommodation or discourtesy between the attorneys in this case, then no sanction will be off limits." *See* dkt. 55 at 2. In the instant situation, having considered all the parties' submissions, I find that the mixup that prompted Digene's motion was Third Wave's fault, but that Third Wave's missteps were negligent, not reckless or intentional. Pursuant to F.R. Civ. P. 37(a)(4)(A) and 37(b)(2), I am ordering cost-shifting and discovery reimbursement in the amount of $50,000 but I am declining to authorize the attorney inquisition requested by Digene.

There is no material dispute over the core facts. This is a scientific patent lawsuit in which the parties have exchanged over a million pages of discovery. In March, 2007, Digene requested, among other things, that Third Wave produce its scientists' lab notebooks dealing with HPV 52 detecting products. Eventually Third Wave agreed to produce these notebooks and began the process of converting them into electronic documents. Unbeknownst to Third Wave, the process by which its attorney reviewed the notebooks did not capture them into the electronic database. As a result, although Third Wave honestly believed it had sent electronic copies of the HPV 52 notebooks to Digene as part of a larger discovery package, Third Wave was incorrect.

The parties continued to negotiate the production information on Third Wave products unrelated to HPV 52 targeting. Although Third Wave believed this information was irrelevant, it finally agreed to provide it to Digene, with one exception: Third Wave was not going to convert into ESI its scientists' lab notebooks on these other products. Instead, it made available in Third Wave's office the notebooks themselves for Digene to page through if it wished. Digene declined this offer. It is not clear whether Third Wave knew that the hard copies of the notebooks dealing with HPV 52 targeting were mixed in with the other notebooks, but this would not have been worth noting at the time because Third Wave still believed that it had sent electronic copies of the HPV 52 notebooks to Digene. In any event, Third Wave's letter to Digene offering the non-HPV 52 notebooks for review does not indicate one way or the other that the HPV 52 notebooks are stored with this set and available for hard-copy review.

Needless to say, Digene couldn't locate the electronic versions of the HPV 52 notebooks in its amassed electronic discovery because they weren't there. Digene inquired about them; Third Wave assured Digene that Digene had the notebooks. Digene continued to accept these representations for a while, but upon failing to locate the notebooks, renewed its concerns to Third Wave. Third Wave continued to insist that the notebooks had been produced.

Meantime, the parties continued to depose witnesses. Some of Third Wave's scientists were unable/unwilling to provide unconditional substantive responses to Digene's questions without first consulting the HPV 52 notebooks. In late July, 2007,Third Wave's attorneys agreed to confirm that Digene had in fact received the notebooks. In a July 24, 2007 e-mail, Third Wave referred Digene back to Third Wave's June 8, 2007 letter that offered the other notebooks for hard-copy review. Perhaps this was intended as a statement that HPV 52 notebooks were available at any time just like the other notebooks, but actually this was at the very most no more than an implication. Digene thanked Third Wave for this response; one might infer from this that Digene recognized the implication, but in hindsight, clearly Digene did not. On August 4, 2007 Digene sent Third Wave a letter demanding Third Wave's final response on who had the notebooks. Third Wave responded that it had notified Digene on July 24 that the "missing" notebooks were available for review at Third Wave. The attorneys exchanged more letters and e-mails, finally agreeing that Digene would send paralegals to Third Wave for an on-site review. In August, Digene sent a squad of paralegals to Third Wave for an on-site search; they found the "missing" HPV 52 notebooks in with the non-HPV 52 notebooks.

Chagrined, Third Wave immediately provided the notebooks and offered its scientists for re-deposition, and offering to reimburse Digene for any additional travel costs incurred. Digene parried by presenting a bill for $85,000 in wasted attorney time. Third Wave balked, so here we are again, with another set of cross-dudgeons. Maybe Nietzsche was right about eternal recurrence.

Now that the parties have arrived at the point of requesting relief from the court, Digene has upped the ante, claiming intentional or reckless discovery misbehavior by Third Wave's attorneys that must be explored and explained; Third Wave counters that it's not Third Wave's fault that Digene didn't understand that the purportedly "missing" notebooks always were available for hands-on review. Third Wave also observes in surreply that Digene did not use the HPV 52 notebooks at all of its re-depositions of Third Wave's scientists. Digene responds that it used the notebooks extensively with some witnesses, and might have approached this entire discovery sequence differently if it had had access to the HPV 52 notebooks at the outset.

If this dust-up were the first discovery snafu in this case, then I would declare no harm/no foul and direct the parties to move on. But it's not, and I warned the parties that they are on a short leash with the court. That said, I do not intend to impose any of the inquisitorial sanctions demanded by Digene and no Third Wave attorneys will be dragged behind a chariot outside the city's walls. The penalty will be cost-shifting and reimbursement in the amount of $50,000. This misunderstanding *was* Third Wave's fault, but Third Wave's mixed messages to Digene demonstrate negligence, not recklessness or intentional misdirection. Third Wave had nothing to gain by deep-sixing the notebooks, which it had agreed to divulge. But in light of

Third Wave's ambiguous and almost self-contradictory reports about these notebooks, Digene cannot be faulted for failing earlier to visit Third Wave headquarters to search for and review hard copies of the HPV 52 notebooks.

That said, pursuant to Rule 37(a)(4)(A) and (b)(2), I am not going to deem "reasonable" or find causation for every claimed discovery expense that Digene with a straight face somehow can connect however tenuously to the missing notebooks. The court does not have the time or the inclination to sort the wheat from the chaff in Digene's claim; given the totality of the circumstances, I conclude that a reasonable figure that encompasses both cost-shifting and a 37(b)(2) sanction may be found in the second quartile of Digene's reimbursement request. Undoubtedly both companies already have committed millions of dollars to this litigation, but a five-digit check still qualifies as large enough to drive home the point that even unintended discovery lapses can have major consequences.

## ORDER

It is ORDERED that Digene's motion to compel discovery is GRANTED IN PART and DENIED IN PART in the manner and for the reasons stated above. Third Wave and its attorneys are jointly and severally responsible to pay $50,000 to Digene's attorneys not later than December 7, 2007.

Entered this 24th day of October 2007.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

5